UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TOWN & COUNTRY CO-OP, INC., | ) | Case No. 1:11 CV 2578 |
| | ) | |
| Plaintiff, | ) | Judge Dan Aaron Polster |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| AKRON PRODUCTS CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

On November 28, 2011, Plaintiff Town & Country Co-op, Inc. ("T&C") sued Defendants Akron Products Co. ("Akron Products") and HAH Investments of Medina, LLC ("HAH") for violations of the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq. ("RCRA"), and state-law claims of trespass and nuisance related to groundwater contamination migrating from the former Akron Products (currently HAH) site to the adjacent T&C site in Seville, Ohio.

This case is before the Court on the following, fully briefed dispositive motions:

1. Motion of Defendant Akron Products Co. to Dismiss the Complaint of Town & Country Co-op, Inc. (**Doc #: 6**); and

2. Motion of Defendant HAH Investments of Medina, LLC to Dismiss the Complaint of Town & Country Co-op, Inc. (**Doc #: 7**).

Defendants, who are represented by the same counsel, argue: T&C does not have plausible claims against them under RCRA § 6972(a)(1)(B) because no hazardous waste is identified and there is no imminent endangerment to T&C; T&C lacks a plausible claim against Defendants

under RCRA § 6972(a)(1)(A) because no solid waste was disposed at the Akron Products site; and the four-year statute of limitations for damage to real property under Ohio Revised Code §§ 2305.09(A) and (D) bar the trespass and nuisance claims.

## I.

The Complaint alleges the following facts. T&C owns property located at 16 West Market Street, Seville, Medina County, Ohio. The former Akron Products site (and the current HAH site) is adjacent to the southern boundary of T&C's property. During the course of an environmental investigation of its property, T&C obtained samples of its soil and groundwater, which is six feet below the ground's surface. Groundwater sampling results indicate that the groundwater at the southern end of its property is contaminated with the chlorinated compound Trichloroethylene ("TCE") and its daughter products (vinyl chloride and cis-1,2-dichloroethene) at concentrations exceeding maximum contaminant levels ("MCLs") for drinking water under the Safe Drinking Water Act, 42 U.S.C. §§ 330f-300j-26, and the Unrestricted Potable Use Standards ("UPUS") set forth in Ohio Adm. Code 3745-300-08(D). The groundwater samples indicate the presence of TCE in concentrations as high as 303 micrograms/liter (MCL = 5 micrograms/liter); vinyl chloride has been detected in concentrations as high as 80 micrograms/liter (MCL - 2 micrograms/liter); and cis-1,2-dichloroethene has been detected in concentrations as high as 700 micrograms/liter (MCL - 70 micrograms/liter). The chlorinated compounds detected in T&C's groundwater were <u>not</u> detected in its soil.

Data obtained by T&C reveals that groundwater flows from the former Akron Products site onto T&C's property. The groundwater monitoring data from wells located in the southeast corner of the T&C Property indicates that contaminated groundwater flows under the T&C

property toward adjacent residences located to the east on Milton Street. T&C claims that it is aggrieved and adversely affected by the violations because the groundwater contamination reduces the value of its property and places limitations on the use and enjoyment of its property.

Since at least 1976 and continuing until 2005, Akron Products ran its operations at the former Akron Products site where it manufactured and assembled adjustable columns and floor jacks. Its operations included paint dip lines and tanks. On August 14, 1980, Akron Products registered with the U.S. EPA as a "small quantity generator" of hazardous waste.

For an undetermined period of time, Akron Products used TCE in its operations. Hazardous waste manifests in Ohio EPA files indicate TCE was used during at least the 1990s. In 2001, the Ohio EPA investigated a written complaint alleging that TCE was "heavily used" and "run off into the ground" at the former Akron Products facility for almost twenty years and that "it was not uncommon to run hoses from the paint tanks out the back door to drain the tanks quicker." In 1993, while investigating a release of petroleum from an underground storage tank on the Akron Products site, an environmental consultant retained by Akron Products (Chem-Tech) detected TCE and its daughter products in a groundwater sample taken from a soil boring located next to the paint building. There is no evidence that Akron Products shared this information with the Ohio EPA during its 2001 investigation.

In April 2005, a now-dissolved entity, BMK Ventures, Ltd. ("BMK Ventures"), purchased the Akron Products property. In June 2007, HAH purchased the former Akron Products property from BMK Ventures.

Based on these factual assertions, T&C filed a complaint against Akron Products and HAH alleging that their conduct: (1) poses an imminent and substantial endangerment to health

or the environment under Section 7002(a)(1)(B) of the Resource Conservation Recovery Act, 42 U.S.C. § 6972(a)(1)(B) ("RCRA") (First Claim for Relief); (2) violates the prohibition against open dumping of solid or hazardous waste under 42 U.S.C. § 6972(a)(1)(A) (Second Claim for Relief); (3) constitutes a private nuisance (Third Claim for Relief); and (4) constitutes a trespass (Fourth Claim for Relief).

## II.

Defendants' 12(b)(6) motions to dismiss for failure to state a claim seek dismissal of all claims. A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. "The first step in testing the sufficiency of the complaint is to identify any conclusory allegations." *Doe v. Simpson*, No. C-1-08-255, 2009 WL 2591682, at *1 (S.D. Ohio Aug. 19, 2009) (citing *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)). 550 U.S. 544, 555 (2009)). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 120 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Simpson*, 2009 WL 2591682, at *1 (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 550). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. More is required than "unadorned, the-defendant-unlawfully-

-4-

harmed me accusations." *Id*.

### III.

### A. First Claim: Imminent and Substantial Endangerment to Health of the Environment

T&C asserts a RCRA claim against Defendants for posing an imminent and substantial endangerment to health or the environment under 42 U.S.C. § 6972(a)(1)(B). "RCRA is a comprehensive environmental statute that empowers EPA to regulate hazardous wastes from cradle to grave, in accordance with the rigorous safeguards and waste management procedures of Subtitle C, 42 U.S.C. §§ 6921-6934." *City of Chicago v. Environmental Defense Fund*, 511 U.S. 328, 331-32 (1994).

A private party may bring suit under RCRA "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present any imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Once certain unchallenged notice and enforcement requirements are met, § 6972(a)(1)(B) requires a plaintiff to prove (1) the defendant is a person; (2) that contributed to, or is contributing to, the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) such waste may present an imminent and substantial endangerment to health or the environment. *Id*. at 1109 (citing *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1020 (10th Cir. 2007).

### 1. "Contributed to" Language

Defendants both argue that mere ownership of real property is insufficient to qualify as having "contributed to, or is contributing to" unlawful waste-handling activities for liability under § 6972(a)(1)(B), and that liability attaches only to parties that were or are actively

involved in waste-handling activities. Defendants are correct. *See ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 359 (2d Cir. 1997) (plaintiff fails to establish § 6972(a)(1)(B) violation where it cannot show that a defendant spilled hazardous chemicals or otherwise contaminated the site); *Sycamore Indus. Park Assoc. v. Ericsson, Inc.*, 546 F.3d 847 (7th Cir. 2008) (mere ownership of contaminated property is insufficient to warrant § 6972(a)(1)(B) liability; RCRA requires active involvement in handling or storing of hazardous materials); *Hinds Investments, LP v. Angioli*, 654 F.3d 846 (9th Cir. 2011) (RCRA liability under § 6972(a)(1)(B) requires that a defendant be actively involved in, or have some degree of control over, the waste disposal process).

There is no allegation in the Complaint that HAH uses TCE in its operations, has unlawfully disposed of TCE on its property, or ever exerted any degree of control over Akron Products' waste-disposal activities.

On the other hand, the Complaint pleads sufficient factual matter supporting the claim that Akron Products used TCE in its paint-dipping operations, and failed to treat the TCE before unlawfully disposing of it on its property. Thus, the Court cannot dismiss the claim against Akron Products on this basis.

**2. "Hazardous Waste"**

Akron Products argues that T&C has failed to adequately state this claim because, although the complaint asserts that Akron Products spilled, leaked or dumped TCE, vinyl chloride and other contaminants on its property, none of the chemicals is expressly listed as a "hazardous waste" as defined in 42 U.S.C. § 6903(27).

RCRA defines "solid waste" as, among other things, "any . . . discarded material,

including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining and agricultural operations." 42 U.S.C. § 6903(27). RCRA defines "hazardous waste" as a solid waste "which, because of its quantity, concentration, or physical, chemical, or infectious characteristics may . . . cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness, or . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." 42 U.S.C. § 6903(5).

Under RCRA, wastes are hazardous if the EPA lists them as hazardous following a rulemaking, or if they possess one of the following four characteristics: ignitability, corrosivity, reactivity, or toxicity. 42 U.S.C. § 6921(a); 40 C.F.R. pt. 26.1. Once a waste is listed as hazardous, every aspect of its existence is regulated under Subtitle C. *See Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914 (D.C.Cir. 1998); *Chemical Waste Mgt., Inc. v. EPA*, 976 F.2d 2, 8 (D.C.Cir. 1992).

Contrary to Defendants' argument, TCE is expressly identified under Subpart C of 40 C.F.R. § 261.24 as EPA Hazardous Waste ("HW") No. D040 due to its toxicity. It is expressly identified as a hazardous waste under Subpart D where it is characterized as a spent halogenated solvent used in degreasing (EPA HW No. F001), a spent halogenated solvent (EPA HW No. F002), and a hazardous discarded chemical product or byproduct (EPA HW No. U228). In addition, TCE has been identified as a hazardous waste in other cases cited by Akron Products in support of its motion to dismiss. *See, e.g., Leister v. Black & Decker Inc*., 117 F.3d 1414 (4th Cir. 1997) ("From 1952 to 1987, Black & Decker's manufacturing process utilized certain hazardous substances, including trichloroethylene (TCE), . . ."); *Board of County Comm'rs of*

*County of La Plata, Colo. v. Brown Group Retail, Inc*., 768 F.Supp.2d 1092 (D. Colo. 2011) (identifying TCE as a hazardous substance).

### 3. "Imminent and Substantial Endangerment"

Next, Akron Products contends that the Court should dismiss the RCRA claim against it because T&C has failed to show that Akron Products' alleged contamination of T&C's groundwater "may present any imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). RCRA's use of the expansive term "may present" is intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risk posed by toxic wastes." *Burlington*, 505 F.3d at 1020. However, "there is a limit to how far the tentativeness of the word *may* can carry a plaintiff." *Crandall v. City & County of Denver, Colo*., 594 F.3d 1231, 1233 (10th Cir. 2010). The term "may present" quite clearly excludes waste that no longer presents an imminent endangerment. *Meghrig v. KFC Western, Inc*., 516 U.S. 479, 485-86 (1996). Endangerment to health or the environment is "imminent" if it threatens to occur immediately. *Meghrig*, 516 U.S. at 485. This is not to say that a plaintiff must show that actual harm will occur immediately as long as the risk of threatened harm is present. *Burlington*, 505 F.3d at 1020.

The term "endangerment" means a "threatened or potential harm." *Id*. Endangerment is substantial under RCRA when it is "serious," and when "there is reasonable cause for concern that someone or something may be exposed to risk of harm by release, or threatened release, or hazardous substances in the event remedial action is not taken." *Id*. at 1021. If an error is to be made in applying the endangerment standard, the error must be made in favor of protecting public health, welfare and the environment." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc*., 399

F.3d 248, 259 (3d Cir. 2005).

The Court finds that the Complaint contains sufficient factual allegations supporting T&C's claim that Akron Products, which used TCE in its paint-dipping operations, unlawfully disposed of the TCE and its daughter products on its property, which waste seeped into the groundwater underneath Akron Products' former site and has now contaminated T&C's groundwater. The Complaint sufficiently alleges the specific concentrations of the toxic chemicals in its groundwater samples that <u>far exceed</u> maximum contaminant levels for safe drinking water. The Complaint asserts the specific human health risks associated with inhaling TCE and its daughter products, ingesting water containing TCE and its daughter products, and dermal contact with TCE and its daughter products. (See Compl. ¶¶ 48-65.). The Complaint notes that the likelihood of exposure to these products is heightened by the shallow depth of groundwater beneath T&C's property. (Id. ¶ 70.) The Court finds that the Complaint contains factual allegations allowing the Court to draw the reasonable inference that Akron Products may be liable for the misconduct alleged.

For all these reasons, the § 6972(a)(1)(B) claim is dismissed against Defendant HAH, but not against Defendant Akron Products.

### B. Second Claim: Creating Imminent and Substantial Endangerment Claim – Prohibition Against Open Dumping

Defendants next argue that the claim for violation of the prohibition against open dumping must be dismissed for failure to state a claim. "The term 'open dump' means any facility or site where solid waste is disposed of which is not a sanitary landfill which meets criteria promulgated under section 6944 of this title and which is not a facility for disposal of hazardous waste." § 6903(14). Akron Products does not deny that its former site is neither a

sanitary landfill nor a facility for disposal of hazardous waste. RCRA § 6972(a)(1)(A) allows any person may to commence a civil action against any person "who is alleged to be in violation of any . . . prohibition . . . which has become effective pursuant to this chapter."

Under the pertinent provision of 42 U.S.C. § 6945:

[A]ny solid waste management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste is prohibited, except in the case of any practice or disposal of solid waste under a timetable or schedule for compliance established under this section. The prohibition contained in the preceding sentence shall be enforceable under section 6972 of this title against persons <u>engaged in the act of open dumping</u>.

42 U.S.C. § 6945(a) (emphasis added). Thus, T&C may maintain a § 6972(a)(1)(A) claim against Defendants only if they were, at the time this case was filed, "engaged in the act of open dumping." *South Road Assoc. v. Int'l Business Machines Corp.*, 216 F.3d 251, 256 (2000) (rejecting the argument that continuing MCL exceedances themselves caused by past dumping practices, constitutes "open dumping" violation). What is prohibited is <u>the present act of introducing a substance that causes MCL exceedances</u>, not the action of the MCL exceedances on the environment. *Id.* (holding that plaintiff's allegation that continued presence of pollutants in the groundwater resulting from prior disposal of hazardous waste did not constitute open dumping). *See also Association Concerned Over Resources and Nature, Inc. v. Tennessee,* No. 1:10 84, 2011 WL 1357690 (M.D.Tenn. 2011) (distinguishing between historical or wholly past dumping violations and ongoing violations); *Nothern Calif. River Watch v. Exxon Mobil Corp.*, 2010 WL 3184324 (N.D. Cal. 2010) (RCRA requires that a plaintiff allege a current, ongoing, or intermittent RCRA violation in order to state a claim under § 6972(a)(1)(A); wholly past violations are beyond the reach of § 6972(a)(1)(A)); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) (holding same); *Mervis Indus., Inc. v. PPG Indus., Inc.*,

No. , 2010 WL 1381671, at *3 (S.D.Ind. Mar. 30, 2010) (holding same).

Here, there is no allegation that Akron Products, which sold its former site to BMK Ventures in 2005, was engaged in the act of open dumping of TCE or its daughter products six years later when this case was filed. Also, there is no allegation that current owner HAH was ever engaged in the act of the open dumping TCE or its daughter products. Accordingly, this claim against both Defendants is dismissed.

### C. Third Claim: Trespass

T&C alleges that Akron Products, by its unauthorized disposal of waste containing TCE and its daughter products at its former site, caused the contamination of groundwater that has migrated into the groundwater 6 feet below T&C's property. (See generally Compl. §§126-132.) T&C further alleges that HAH, by its failure to remediate the contamination, caused or contributed to the continuous migration of contaminated groundwater beneath T&C's property. (Id.) The aforementioned unauthorized acts and omissions constitute, according to T&C, a permanent and/or continuing trespass. (Id.)

In Ohio, the elements necessary to state a claim for trespass are an unauthorized intentional act and entry upon land in the possession of another. *Lally v. BP Prod. NA*, 615 F.Supp.2d 654, 659-60 (N.D. Ohio 2009) (citing *Brown v. Scioto Cty. Bd. of Comm'rs*, 87 Ohio App.3d 704, 716 (4th. Dist. Scioto Cty., 1993)). A person or entity is liable to another for trespass if the person or entity intentionally enters upon the land of another or causes a thing to do so. *Abraham v. BP Exploration & Oil, Inc*., 149 Ohio App.3d 471, 475 (Ohio App. 10 Dist. 2002). The four-year statute of limitations set forth in Ohio Revised Code § 2305.09 governs trespasses to real property. *See Lally*, 615 F.Supp.2d at 660; *Stewart v. Allen*, 2008 WL 918528,

at *3 (Ohio App. 9 Dist., Apr. 7, 2008).

Before the Court can determine whether the statute of limitations has expired, it must first determine what type of trespass is implicated. *Id*. A continuing trespass occurs when there is some continuing or ongoing tortious activity attributable to the defendant. *Sexton v. City of Mason*, 117 Ohio St.3d 275, 282 (2008). A permanent trespass occurs when the defendant's tortious activity has been fully accomplished. *Id*. "The defendant's ongoing conduct or retention of control is the key to distinguishing a continuing trespass from a permanent trespass." *Id*. The court may not consider whether the damage persists; rather, the Court must determine whether ongoing tortious activity may be attributed to the defendant. *Id*. Where the defendant has sold the property in question, it can no longer rectify the situation, making its trespass permanent rather than continuous. *Lally*, 615 F.Supp.2d at 660 (citing *Sexton*, 117 Ohio St.3d at 280).

The four-year limitations period for permanent trespasses, however, "is tempered by the discovery rule." *Wojcik v. Pratt*, 2009 WL 3119629, at *4 (Ohio App. 9 Dist.) (citing *Harris v. Liston*, 86 Ohio St.3d 203, 207 (1999)). "The discovery rule tolls the statute of limitations until the permanent trespass is 'discovered, or in the exercise of reasonable diligence [ ] should have been discovered[.]'" *Id*. (quoting *Harris*, at paragraph two of the syllabus). *See also Lally*, 615 F.Supp.2d at 660.

Defendants argue that the discovery rule in *Harris* does <u>not</u> apply to permanent trespasses, and that the Ohio Supreme Court's subsequent decision in *Sexton* "recognized the distinction between the permanent vs. continuing trespass/nuisance statute of limitations." (Doc #: 14, at 1.) The Court disagrees.

-12-

In *Harris*, purchasers of a home sued the real estate developer, alleging the developer had negligently constructed a water-management system which created a nuisance (to wit, a standing-water problem on the purchasers' property). The question was whether persons who bought in 1993 a home that was built in 1985 could bring a nuisance claim for damage or injury to real property against the developer. The court noted that, "[g]enerally, a cause of action accrues at the time the wrongful act is committed. . . . However, in situations where the wrongful act does not immediately result in injury or damage, strict application of the general rule can lead to an unjust result. Thus, to provide for a more equitable solution, this court, in accordance with judicial authority, . . . has applied a discovery rule in numerous situations." 86 Ohio St.3d at 205-06 (internal citations omitted). Citing *NCR Corp. v. U.S. Mineral Prod. Co.*, 72 Ohio St.3d 269, 271 (1995), the *Harris* court noted that it had previously determined that O.R.C. § 2305.09(d) applied to situations where a party is seeking recovery for injury or damage to real property and that a discovery rule was appropriate for accrual of such claims. *Harris*, 86 Ohio St.3d at 207. Accordingly, the court "reaffirmed that tort actions for injury or damage to real property are subject to the four-year statute of limitations set forth in R.C. 2305.09(D)" and that the statute "commences to run when it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property." *Id*.

In *Sexton*, homeowners brought a trespass action against the developer of an upstream subdivision regarding flooding problems on the homeowners' property following the completion of that subdivision. Although the homeowners first became aware of the problem in 1992, they did not file a complaint until 2003. Contrary to Defendants' position, the Ohio Supreme Court in *Sexton*, citing *Harris*, stated that the record below fully supported the trial court's observation

-13-

that "for purposes of the discovery rule stated in *Harris*'s second syllabus paragraph, the Sextons discovered the damage in 1992, so the statute of limitations commenced to run at that time." *Sexton*, 117 Ohio St.3d at 278.  Because the homeowners waited eleven years after they first discovered the damage to file a lawsuit, however, the only question was whether the persistent damage to the homeowners' property was a "continuing trespass or nuisance for which a cause of action accrues, and may be brought at any time . . . " *Id.* at 279 (emphasis added).  The *Sexton* court concluded that the developer's trespass was not a continuing trespass because his tortious act had been fully accomplished. Furthermore,

> [t]he adoption of the discovery rule in *Harris* for claims such as those raised here eases many of the potential concerns regarding a standard that focuses on the ongoing conduct of a defendant to determine whether the statute of limitations is tolled.  Under *Harris*, the statute of limitations does not begin to run until a plaintiff discovers, or reasonably should have discovered, damage to the property. Therefore, a plaintiff who could not reasonably have discovered that he or she was damages will not be foreclosed from filing suit within four years of the date when the damage becomes evidenct or should have become evident, even if the defendant did not exert continuing control over the alleged source of the damage during that period.

*Id.* at 284.

It is undisputed that Akron Products sold the property to BMK Ventures in April 2005.  Because it sold the property in April 2005, it could no longer dispose hazardous waste or rectify the situation, making its alleged trespass permanent following the sale.  *Id.* at 282.  Thus, the latest date on which the permanent trespass claim accrued was the date the property was sold in April 2005.  However, the statute of limitations does not begin to run until a plaintiff discovers, or reasonably should have discovered, damage to the property.  *Id.* at 284; *Harris*, 86 Ohio St.3d at 203; *Wojcik*, 2009 WL 3119629, at *4.

According to the complaint, T&C conducted environmental investigations on its own

-14-

property beginning in February 2008 and continuing through September 2010. (See Compl. ¶¶ 25-46.) The investigations revealed groundwater contaminated with TCE and its daughter products, in concentrations exceeding MCLs, no more than 6 feet below the surface of T&C's property. (Id.) These hazardous products, however, were not detected in any of T&C's soil samples. (Id.) The complaint alleges that Akron Products conducted paint-dipping operations using TCE on the former site; an environmental consultant retained by Akron Products detected TCE and its daughter products in a groundwater sample taken from the Akron Products' site in 1993; in 2001, Ohio EPA received and investigated a written complaint alleging that TCE was used at the former Akron Products facility and regularly drained onto the ground for a period of nearly 20 years; upon information and belief, the waste containing TCE was not treated in any manner prior to its disposal; and T&C's investigations revealed that groundwater flows north from the former Akron Products property onto the T&C property. (Compl. ¶¶ 12-20.) Assuming the truth of these allegations, the earliest T&C could have possibly discovered Akron Products' alleged trespass was February 2008. Since T&C filed the complaint within four years of its discovery, or November 28, 2011, the time for bringing a trespass claim has not expired. Accordingly, the trespass claim against Akron Products cannot be dismissed on this basis.

HAH seeks dismissal of the trespass claim against it because it did not actively cause the groundwater contamination found on T&C's property. Section 158 of the Restatement (Second) of Torts, which the Ohio Supreme Court has cited approvingly, *see Baker v. Shymkiv*, 6 Ohio St. 3d 151, 153 (1983), provides that one is subject to liability to another for trespass if he intentionally:

> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or

>(b) remains on the land, or
>(c) *fails to remove from the land a thing which he is under a duty to remove*.

(Emphasis added). Section 161 of the Restatement (Second) further provides:

>A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor's predecessor in legal interest therein has tortiously placed there, if the actor, having acquired his legal interest in the thing with knowledge of such tortious conduct or having thereafter learned of it, fails to remove the thing.

Under these rules, HAH is liable for trespass, even though it did not dump the contaminants, because it is the successor in legal interest of the property, including the contaminants seeping onto T&C's, and because it has learned of the tortious conduct (see Complaint ¶ 117) and failed to remove the contaminants. Accordingly, the trespass claim against HAH cannot be dismissed.

### D. Fourth Claim: Private Nuisance

T&C alleges that the contaminated groundwater caused by Akron Products and perpetuated by HAH unreasonably interferes with its ownership and possessory interests in its property constituting a private nuisance. (See generally Compl. ¶¶ 113-124.) T&C alleges that it notified Akron Products of the groundwater contamination that migrated onto T&C's property in March 2009, and that it notified HAH of the contaminated groundwater migration in May 2010. (Compl. ¶¶ 116, 117.) T&C alleges that the contaminated groundwater unreasonably interferes with its ownership and possessory interests in its property.

"A 'private nuisance' is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Bracket v. Moler Raceway Park, LLC*, 195 Ohio App.3d 372, (Ohio App. 12 Dist. 2011) (citation omitted). In order for a private nuisance to be actionable, the invasion must either be intentional and unreasonable, or unintentional but caused by negligent,

-16-

reckless, or abnormally dangerous conduct. *Id*. A permanent nuisance occurs when the wrongdoer's tortious act has been completed, but the plaintiff continues to experience injury in the absence of any further activity by the defendant. *Lally*, 615 F.Supp.2d at 661*; Weir v. East Ohio Gas Co.*, Mahoning App. No. 01CA 207, 2003 WL 1194080, ¶ 18 (2003)*; Haas v. Sunset Ramblers Motorcycle Club, Inc.*, 132 Ohio App.3d 875 (1999).

Defendants argue that this claim, like the trespass claim, is barred by the four-year statute of limitations under § 2305.09(D). Under *Harris*, however, the discovery rule applies to nuisance claims. Because TC filed its nuisance claim within four years of discovering the groundwater contamination, the claim cannot be dismissed on this basis.

HAH seeks dismissal of the nuisance claim against it because it did not actively cause the groundwater contamination found on T&C's property. However, under Section 839 of the Restatement (Second) or Torts:

> A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and
> (a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and
> (b) he knows or should know that it exists without the consent of those affected by it, and
> (c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it.

HAH's conduct fits the elements of a nuisance claim, so dismissal is inappropriate.

**IV.**

In sum, for the foregoing reasons, the first claim—imminent and substantial endangerment to the health of the environment— is dismissed as to HAH. The first claim is <u>not</u> dismissed as to Akron Products. The second claim—creating imminent and substantial

endangerment—is dismissed as to both Akron Products and HAH. The remaining two claims—trespass and private nuisance—are <u>not</u> dismissed.

**IT IS SO ORDERED.**

                                         */s/ Dan A. Polster 5/11/12*
                                         **Dan Aaron Polster**
                                         **United States District Judge**